UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>vs.<br><br>JOEL RIVAS | No. 10 CR 617-2<br><br>Judge Amy J. St. Eve |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S**
**MOTION FOR NEW TRIAL**

The UNITED STATES OF AMERICA, by its attorney, GARY S. SHAPIRO, United States Attorney for the Northern District of Illinois, submits the following response to defendant's motion for new trial. Dkt. #188.

**I.   Background**

Defendant was charged in six-count superseding indictment with: (1) conspiracy to possess with intent to distribute and to distribute 5 kilograms or more of cocaine and a quantity of marijuana, in violation of 21 U.S.C. § 846 (Count One); (2) possession with intent to distribute a quantity of cocaine and marijuana, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count Two); (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Three); and (4) two counts of unlawful possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (Counts Four and Five). Dkt. #23. A second defendant, Ismael Miranda, was originally charged along with defendant. Miranda pled guilty in October 2011, Dkt. #42, and was subsequently sentenced to 20 years in prison. Dkt. #59.

On July 18, 2013, following a four-day trial, a jury returned a verdict of guilty on all counts. Dkt. #180. The evidence presented during that trial is summarized in the government's response to defendant's motion for acquittal. Dkt. #195.

## II. DISCUSSION

### A. The Court Did Not Err in Denying Defendant's Batson Challenge

A defendant claiming that the government has improperly exercised a preemptory strike in a discriminatory manner bears the burden of "making a prima facie showing of illegality." *United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir. 1992). If a defendant is able to make a prima facie showing, the government must provide a race-neutral explanation for the strike. *Pruitt v. McAdory*, 337 F.3d 921, 928 (7th Cir. 2003) (citations omitted). Once the government has provided a race-neutral reason for the strike, defendant bears the burden of proving intentional discrimination and that the government's proffered reason was a pretext for discrimination. *Id.*

Here, defendant has not shown that the government followed a pattern of striking Hispanic jurors. To the contrary, five of the government's six preemptory challenges were exercised to exclude non-Hispanic, white jurors, and at least one Hispanic juror, Juror #10, was ultimately selected to sit on the jury. *United States v. Roebke*, 333 F.3d 911, 913 (8th Cir. 2003) (strike of the sole African-American juror is insufficient, without more, to create a prima facie case of discrimination).

The government provided a credible, race-neutral explanation for striking Juror #3, who was Hispanic.[1] During jury selection, Juror #3 stated that her nephew had recently been on trial for murdering his young child. Juror #3 explained that she had attended the entire trial, at the conclusion of which her nephew was found not guilty by reason of insanity. As the government proffered at the time, the government chose to use a preemptory challenge on Juror #3 due to its concern that her recent experience observing her nephew's murder trial was likely an emotional one that may have affected her ability to weigh the evidence in this case or prejudiced her against the prosecution. The fact that her nephew was not convicted raised additional concerns for the government about whether that experience would have affected her as a juror in this case.

In light of the government's race-neutral reason, the defendant bears the burden of proving intentional discrimination. *Pruitt*, 337 F.3d at 928. Defendant has done nothing to discredit the government's explanation or suggest that it was pretextual. Instead, defendant's argument focuses on the reasons why Juror #3 could have served on the jury. But as the Court noted in rejecting defendant's original challenge, the test under *Batson* is not whether the government could have struck the juror for cause. Indeed, "[t]o survive a Batson challenge, unlike a challenge for cause, a peremptory strike need not be based on a strong or good reason, only founded on a reason other than race or gender." *United States v.*

---

[1] Defendant did not order a transcript of jury selection, so the following account is based on the government's notes and memory.

3

*Brown*, 34 F.3d 569, 571 (7th Cir. 1994). It need only be credible and non-discriminatory.

The Court correctly found that the government's race-neutral reasons for striking Juror #3 were credible and sincere. Defendant's motion should be denied.

### B. The Jail Call Between Defendant and Miranda was Properly Admitted Under FRE 801(d)(2)(A) and 801(d)(2)(E)

Prior to trial, defendant filed a motion *in limine* seeking to preclude the admission of the jail call between defendant Rivas and Miranda following the search of the Elgin storage unit on the grounds that the call constituted inadmissible hearsay. Dkt. #118. The Court properly rejected defendant's motion, and held that the call was admissible as both a statement of a party opponent, pursuant to Rule 801(d)(2)(A), and a co-conspirator statement, pursuant to Rule 801(d)(2)(E). Dkt. #154.

Defendant now acknowledges that Rivas's portion of the call was admissible as a statement of a party opponent, but argues that the Court erred in admitting Miranda's portion of the conversation as a co-conspirator statement. In doing so, however, defendant offers no new argument or analysis in support of his contention and does not address the authorities cited in the Court's order. Accordingly, his motion should be denied.

### C. The Government's Rebuttal Argument did not Deprive Defendant of a Fair Trial

At trial, the evidence showed that Mark Liby was in prison from approximately September 2009 through February 9, 2013. Tr. 237, 256, 301-02.

4

Liby testified at trial that after his release from prison, he and his girlfriend went to the Elgin storage unit to buy drugs from defendant. Tr. 262-67. The government introduced phone records showing that defendant spoke with Liby on the phone twelve times between February 11 and 13, 2010. Tr. 495-96, G. Ex. Phone Records Summary B. The evidence also established that during the search of the storage unit, Elgin police recovered a note pad listing names and numbers. G. Ex. Photo 31. One of the names listed was "Pork Chop." *Id.* Liby testified that he went by the nickname "pork chop" because prior to his arrest, he had "big, bushy sideburns." Tr. 214-15.

During his testimony, defendant admitted that he sold marijuana to Liby at the storage unit before Liby went to prison in September 2009, and testified that Liby's girlfriend was present for the sale. Tr. 698-700. Defendant also admitted that Liby called him soon after being released from prison. Tr. 704. He testified that he and Liby agreed to meet, Tr. 704, and that he agreed to sell Liby marijuana. Tr. 705. Defendant was less clear about when or where this meeting occurred. Defendant testified that he actually met with Liby twice after Liby was released from prison. Tr. 705. During the first meeting, defendant sold marijuana to Liby and during the second meeting he sold Liby a car. Tr. 705-06. Defendant testified that one of these meetings occurred approximately one month after Liby was released from prison, but it was not clear which meeting he was referring to. Tr. 705.

In its rebuttal argument, the government appears to have misunderstood defendant's testimony regarding his meetings with Liby and argued that *defendant* testified that he met with Liby *at the storage unit* following Liby's release from prison. Defendant now argues that the government argument deprived him of a fair trial.

The Seventh Circuit has repeatedly held that "[i]mproper statements during closing arguments are rarely reversible error." *United States v. Anderson*, 450 F.3d 294, 300 (7th Cir. 2006) (citing *United States v. Bowman*, 353 F.3d 546, 550 (7th Cir. 2003)); *see also United States v. Amerson*, 185 F.3d 676, 685-86 (7th Cir. 1999); *United States v. Wilson*, 985 F.2d 348, 353 (7th Cir. 1993). In examining whether a prosecutor's comments to the jury reached the level of prosecutorial misconduct, courts first examine whether the comments were themselves improper. If so, courts then evaluate the statements in the context of the entire record and determine whether the defendant was deprived of a fair trial. In doing so, courts consider five factors:

> (1) the nature and seriousness of the misconduct; (2) the extent to which the comments were invited by the defense; (3) the extent to which the prejudice was ameliorated by the court's instruction to the jury; (4) the defense's opportunity to counter any prejudice; and (5) the weight of the evidence supporting the conviction.

*United States v. Sandoval*, 347 F.3d 627, 631 (7th Cir. 2003). Moreover, "where the defendant fails to object to the remarks at the time they were made, the plain error standard additionally requires that the defendant 'establish not only that the

remarks denied him a fair trial, but also that the outcome of the proceedings would have been different absent the remarks.'" *Id.*

To the extent that the government misunderstood and mischaracterized defendant's testimony, the error did not deprive defendant of a fair trial. The Court instructed the jury that the statements of the attorneys were not evidence several times, including before opening statements and before closing arguments. Tr. 763. The Court's final jury instructions expressly stated that "[i]f what a lawyer said is different from the evidence as you remember it, the evidence is what counts." Dkt. #179 at 5. Notably, defendant did not object to the government's comments during the trial. *United States v. Anderson*, 450 F.3d 294, 300 (7th Cir. 2006); *United States v. Neely*, 980 F.2d 1074, (7th Cir. 1992).

The government did not linger on this issue. After making the challenged comments, the government quickly moved on to discuss the illogic of defendant's testimony and how the recovery of defendant's belongings during the search of the storage unit belied his claim that he had moved out in January 2009. Tr. 801-04. The government presented overwhelming evidence of defendant's guilt. As the government noted during its argument, Liby's testimony that he purchased drugs from defendant at the storage unit shortly after his release from prison on February 9, 2010 was corroborated by phone records showing that defendant and Liby spoke twelve times between February 11 and 13. Liby's testimony was further corroborated by the ledger listing Liby's nickname and what appeared to be an amount of money that was recovered by Elgin police during the search of the

storage unit in February 2010. Moreover, as summarized in the government's response to defendant's motion for acquittal, the evidence overwhelmingly demonstrated that Rivas was present at and used the storage unit to distribute drugs. Dkt. #195.

For his part, defendant has not even attempted to argue that the jury verdict would have been different but for the challenged argument. Indeed, when viewed in light of the overwhelming evidence of defendant's guilt, there is little possibility that the government's brief comments affected the jury verdict.

### D. The Court Did Not Err in Denying Defendant's Motion to Exclude the Government's Fingerprint Expert

Prior to trial, defendant filed a pretrial motion to exclude the government's proposed fingerprint expert. The Court correctly denied defendant's motion in light of binding Seventh Circuit case law. In *United States v. Herrera*, 704 F.3d 480, 484 (7th Cir. 2013), the Seventh Circuit expressly held that fingerprint analysis is admissible under Federal Rule of Evidence 702 and 703. Insofar as defendant's current motion constitutes another "frontal assault on the use of fingerprint evidence in litigation," his motion should be denied. *Herrera*, 704 F.3d at 484 (citations omitted).

Likewise, the court did not err in refusing to allow defendant to cross examine the government's fingerprint expert regarding the facts of a prior case where a different government fingerprint analyst allegedly misidentified a suspect's fingerprint. Tr. 198-201. As the Court noted, defendant was entitled to question the fingerprint expert regarding scientific studies. Tr. 201. And, in fact, defendant

questioned the government's expert extensively on scientific studies that raised questions regarding the validity of fingerprint comparisons, including the National Academy of Sciences 2009 Report. Tr. 194-202.

Defendant also questioned the government's fingerprint expert regarding the obstacles to making an identification based on a partial fingerprint. Tr. 193-98, 201-02, 208-09. At one point, defense counsel asked if it was "possible that a very, very small segment of fingerprint on one individual is similar to a very, very small portion of a fingerprint on another individual?" Tr. 208. The government's fingerprint expert conceded, "that is possible, yes." *Id.*

Defendant further sought to question the government's expert regarding the Brandon Mayfield case. As set forth in defendant's motion to exclude the fingerprint testimony, the misidentification in the Mayfield case was based on two individuals who had similar partial prints. Dkt. #135 at 13 ("The similarities between the two prints in the Mayfield case illustrates a critical problem with the reliability of latent print identification—even if full fingerprints are unique, partial fingerprints from two different people might have patterns similar enough that an impression from one could be mistakenly attributed to the other.").

Defendant cross examined the government's fingerprint expert extensively on the limits of partial fingerprints and was not entitled to further establish this point by questioning the fingerprint expert regarding the facts of a past case in which he was not involved. Tr. 200. In light of the government expert's concession that partial fingerprints from two different people may be identical, there was little

9

probative value to further questioning of the expert regarding the facts of an unrelated case in which such similarity resulted in a false identification. Fed. R. Evid. § 703 (An expert may not testify to otherwise inadmissible hearsay unless the probative value in helping the jury to evaluate the opinion substantially outweighs the prejudicial effect.). Instead, as the Court noted, it risked creating a "sideshow" of little probative value to the instant case. Tr. 200.

### E. The Court Did Not Err in Using the Pattern Jury Instruction for Count Three

In instructing the jury on the definition of "in furtherance of" element to 924(c), the Court utilized the Seventh Circuit pattern jury instruction. Dkt. #179 at 32. Defendant asked the court use a modified version of the pattern instruction that, in defendant's mind, made clear that for purposes of Count Three, the defendant's possession of a firearm had to have occurred in furtherance of the drug possession charged in Count Two, and not the drug conspiracy charged in Count One. Defendant argues that the Court's use of the pattern jury instruction rather than the defendant's proposed modified instruction could have resulted in confusion about the government's legal theory and the basis of the 924(c) charge. This argument should be denied because both the jury instructions and the government's arguments made clear that in order to be guilty of Count Three, defendant's possession of the charged firearms had to be in furtherance of the drug possession charged in Count Two.

The jury instructions made clear that in order to convict defendant on Count Three, the jury had to find that defendant had possessed one or both of the charged

firearms in furtherance of the drug possession charged in Count Two. Specifically, the instructions stated that in order the conviction, the jury must find:

> (1) The defendant committed the crime of *possession with intent to distribute a controlled substance as charged in Count Two of the indictment*; and
>
> (2) He knowingly possessed a firearm; and
>
> (3) His possession of the firearm was in furtherance *of the possession with intent to distribute a controlled substance.*

Dkt. #179 at 31 (emphasis added).

Likewise, there was no confusion during the trial regarding the government's legal theory. During closing arguments, the government clearly articulated its argument that defendant possessed the charged firearms in furtherance of the drug possession count charged in Count Two:

> Count Three charges the defendant with using a firearm in furtherance of a drug-trafficking crime on February 18, 2010—the drugs that were found in the storage unit. Those guns were used in furtherance of the drug-trafficking crime.
>
> And in order to show this and to establish the defendant's guilty of this offense, the government must show, first, that the defendant committed the crime of possession with intent to distribute a controlled substance, as charged in Count Two of the indictment; the defendant possessed the items—the drugs, the marijuana and the cocaine—found in the unit on February 18, 2010. The government must establish that first.
>
> Second, that the defendant knowingly possessed a firearm.
>
> And third, that his possession of a firearm was in furtherance of the possession with the intent to distribute a controlled substance. So, it was in furtherance of possessing the drugs on February 18, 2010.

Tr. 790-91; see also Tr. 799-800 ("And make no mistake about these guns being used in furtherance or to further the drug possession—the drug crime."); Tr. 818 ("He and Ismael Miranda conspired to distribute cocaine and marijuana. They possessed marijuana and cocaine in their storage unit, from which they ran their operation on February 18th. They possessed guns to protect those drugs on February 18th.").

The special verdict form further ensured that the jury did not erroneously convict defendant on Count Three based on some alternative legal theory. While Corey Glass testified that he gave the 9mm handgun to defendant prior to February 2010, Tr. 403-06, the only testimony regarding the .357 revolver came from the Elgin police detective who recovered it during the search of the storage unit on February 18, 2010. Tr. 75-77. Accordingly, when the jury found that defendant possessed both the 9mm handgun and the .357 revolver in furtherance of a drug trafficking crime, they could only have concluded that defendant possessed the guns in furtherance of his possession of cocaine and marijuana on February 18, 2010.

### F. The Jury Found that the Conspiracy Charged in Count One Involved More than Five Kilograms of Cocaine

The Seventh Circuit has repeatedly held that drug amount is not an element of Title 21 narcotics offenses. *See, e.g.*, *United States v. Walker*, 673 F.3d 649, 659 (7th Cir. 2012) (citations omitted). The Supreme Court's recent decision in *Alleyne v. United States*, ___ U.S. ___, No. 11-9335 (June 17, 2013), did not hold otherwise.

Regardless, the jury found beyond a reasonable doubt that defendant's conspiracy involved more than five kilograms of cocaine. Therefore, even if the drug

quantity was an element of the charged conspiracy, the jury made the necessary finding and any instructional error was harmless.

### G. The Court Did Not Err in Allowing the Government to Cross Examine Defendant Regarding One of His Three Prior Drug Convictions

Federal Rule of Evidence 609(a) provides for the admission of evidence that the defendant has been convicted of a felony for the purpose of attacking defendant's credibility, if the probative value of the evidence outweighs its prejudicial effect to the accused. Fed. R. Evid. 609(a).

Here, defendant had three prior felony convictions, including two felony convictions that occurred within ten years of the charge offense. The Court, however, limited the government to using only a single one of defendant's prior felony convictions to impeach his credibility. Dkt. #158.

Defendant now argues that the Court erred in admitting even this single prior felony conviction.[2] In doing so, he repeats the arguments that he previously made in his motion *in limine*, Dkt. #133, and offers no new argument or analysis in support of his motion except for the bare assertion that he was cross examined "extensively" on this point. But the government only briefly alluded to defendant's prior conviction during its cross examination, Tr. 710, 725, and did not reference his

---

[2] This argument is somewhat strange in light of defendant's choice to introduce evidence that he had served time in an Illinois Department of Correction work release center, and that he had met his two drug customers, Mark Liby and Corey Glass, while at the work release center. As discussed in court before the trial, the government had planned to instruct its cooperating witnesses to testify that they had met defendant while living and working in Peoria, without reference to the work release center.

13

prior conviction at all during its closing argument.[3] The government's questions about defendant's knowledge of drug trafficking did not revolve around his prior conviction. Instead, the government questioned defendant about the drug trafficking tools recovered from defendant's storage unit in February 2010. Tr. 748-56. This was fair cross examination. Defendant's motion should be denied.

### III. CONCLUSION

For all of the foregoing reasons, the government respectfully requests that this Court deny defendant's motion for a new trial.

Dated:   October 10, 2013                    Respectfully submitted,

                                                                                                  GARY S. SHAPIRO
                                                                                                   United States Attorney

By:   */s/ Joseph H. Thompson*
      JOSEPH H. THOMPSON
      ERIKA L. CSICSILA
      Assistant United States Attorneys
      219 South Dearborn Street, 5th Floor
      Chicago, Illinois  60604
      (312) 469-6131

---

[3] During closing, the government only briefly referenced the stipulation that defendant had previously been convicted of a felony for purposes of Counts Four and Five, which charged defendant with unlawful possession of a firearm by a convicted felon under 18 U.S.C. § 922(g)(1). Tr. 757, 818.