UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 10 CR 617 |
| | ) | Honorable Amy St. Eve |
| JOEL RIVAS, | ) | |
| Defendant. | ) | |

**DEFENDANT JOEL RIVAS' RESPONSE TO
GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Joel Rivas, by his attorney, Linda Amdur, hereby offers his Response to the Government's Sentencing Memorandum.

**1.     The Offense**

Defendant Rivas requests that this Court not consider evidence offered by the government by way of proffer in its Sentencing Memorandum and only consider evidence properly presented to this Court at trial and/or at sentencing.

**A.     Government's Proffered Statements Regarding The Paid Informant**

In its sentencing memorandum, the government alleges that on February 12 and 16, 2010, an informant made two controlled buys of small amounts of cocaine and marijuana from Mr. Rivas at the Elgin storage unit. According to the Affidavit for the search warrant, after searching a paid informant, Elgin police officers observed the informant go into the storage unit and return with drugs on two occasions. But no police officer could attest to the fact that the informant purchased drugs from Rivas. Only the informant claimed that the seller was Rivas,

1

and this claim was not confirmed by the police officers observations. Defendant Rivas requests that, unless admissible evidence of these transactions is presented at sentencing, the Court discount the government's claim that Joel Rivas sold small quantities of cocaine and marijuana at the Elgin storage unit to a confidential source on February 12 and February 16, 2010.

On January 16, 2013, Defendant Joel Rivas filed Motion for Disclosure of Confidential Informant Information Regarding Elgin Police Informant. R. 112. In its response, the government stated that it did not intend to call the informant to testify at Mr. Rivas' trial, and that if the government were to call the informant to testify at trial, the identity of the informant would be disclosed in advance of trial. R. 114 at 7. The informant was not called as a government witness at trial and the identity of the informant has never been disclosed to the defense. Elgin police officers who witnessed the undercover purchase did not identity the Rivas as the seller, but only could described the seller as a tall man. Only the informant identified Rivas as the seller.

Hearsay evidence from a paid informant used by the Elgin police department lacks sufficient reliability to be admissible at Mr. Rivas' sentencing. The fact that Elgin police officers can testify that they searched the informant, saw him enter the storage unit, and then observed him exit the storage unit and return with the small quantities of drugs, may have been sufficient to establish probable cause for issuance for a search warrant to search the Elgin storage unit, but such evidence is not sufficiently reliable to establish at sentencing that Rivas sold cocaine and marijuana to an informant on February 12 and February 16, 2010.

Moreover, on June 3, 2013, Defendant Joel Rivas filed Motion To Exclude Search Warrant. R. 138. In that Motion, Defendant Rivas argued that while the sworn statements of an Elgin police detective appeared sufficient to establish probable cause for the search of the storage

unit, the statements regarding Rivas were not sufficient to establish probable cause to search Rivas: "Neither the Affidavit nor Complaint establish the reliability of the informant and the only basis for the search of Rivas is based upon the informant's uncorroborated claims as to Rivas." R. 138 at 3-4. In response, the government agreed not to introduce any evidence of the issuance of the search warrant for the defendant's person. R.142 at 6. And the court denied Mr. Rivas Motion as moot. R. 142.

For the same reasons raised in Mr. Rivas earlier motions, the Court should discount the government's proffered statements, regarding any purchases by the paid informant from Rivas.

  **B.**  **Government's Proffered Statements Regarding Crack Cocaine**

According to the Government's Sentencing Memorandum, Mr. Rivas sold crack cocaine to government witnesses Glass and Liby, after they began having problems with the quality of powder cocaine that they purchased from Rivas.

Glass specifically testified that he bought marijuana and powder cocaine from Rivas. T. 381. Glass also testified to the specific amounts of cocaine that he purchased from Rivas, and testified that he cooked the powder cocaine into crack. T. 382-85. He never testified that he purchased crack cocaine from Rivas. The only reference in the record that Rivas sold crack to Glass was proffered by the prosecutor. Proffers by prosecutors certainly are not evidence.

Moreover, as previously noted in Mr. Rivas' Objections to the PSR, the very reason for the issuance of the search warrant at Glass residence was based on the fact that empty bags containing powder cocaine had been recovered from Glass' trash can during the weeks leading up the search. R. 194. The fact that empty bags with powder cocaine were recovered from the Glass trash can and crack was found in Glass' residence suggests that Glass cooked the crack

3

cocaine that was recovered from his residence. Although a judge may consider otherwise inadmissible evidence in calculating a sentence, any evidence upon which the judge relies must have "sufficient indicia of reliability." *United States v. Cleggett*, 179 F.3d 1051, 1054 (7th Cir. 1999) (quoting *United States v. Cedano-Rojas*, 999 F.2d 1175, 1180 (7th Cir. 1993). Under Seventh Circuit law, a "very strong presumption of unreliability" attaches to statements that are: (1) given with government involvement; (2) describe past events; and (3) have not been subjected to adversarial testing. *United States v. Jones*, 371 F.3d 363, 369 (7th Cir. 2004); *United States v. Ochoa*, 229 F.3d 631, 637 (7th Cir. 2000)(citing *Lilly v. Virginia*, 527 U.S. 116, 137 (1999). The statements of Glass regarding crack cocaine contain all three elements, making Glass's statement regarding crack presumptively unreliable.

Similarly as to Mark Liby, he never testified that he purchased crack cocaine from Mr. Rivas.

**2.      Sentencing Calculations**

The defense incorporates all arguments set forth in his Objections and Clarification To Presentence Investigation Report (PSR), R. 194, and his arguments regarding drug quantity as set forth in the Defendant's Version, and adopts those arguments here. Based upon those arguments, Mr. Rivas is responsible for 2,966 grams of cocaine and 35 pounds of marijuana. He bears no sentencing liability for crack cocaine. The resulting base offense level is 28, based on 593.2 kilograms marijuana [200 x 2.966] and 15.876 kilograms marijuana [35 x .4536] totaling 609 kilograms of marijuana.

The defense makes no argument with regard to the obstruction of justice enhancement because the jury by returning a verdict of guilty rejected Mr. Rivas' testimony.

The Group One Narcotics Offenses should receive no enhancement for use of a firearm pursuant to Guideline §2D1.1(b)(1). Pursuant to Guideline §2D1.1(b)(1), "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels." However, if the court imposes a sentence under Guideline §2K2.4 for violation of 18 U.S.C. § 924 ( c ), then the court should not impose a weapon enhancement when determining adjusted base offense level for the underlying narcotics offense. USSG §2K2.4, Note 4. Mr. Rivas was charged and convicted of two firearms under § 924 ( c ). Those two firearms were recovered from the storage unit on February 18, 2010.

Defendant Rivas offers the following calculations as previously set forth in his Objections:

Group One Narcotics Offenses (Counts One and Two)

| | |
|---|---|
| Base offense level | 28 |
| 3C1.1 obstruction of justice | +2 |
| | 30 |

Group Two Possession of Firearms Offenses (Counts Four and Five)

| | |
|---|---|
| Base offense level | 24 |
| 2K2.1(B)(6) | +4 |
| 3C1.1 obstruction of justice | +2 |
| | 30 |

Using the defense calculations, both offense groups have offense level 30, and thus 2 levels are added because the additional group is equally serious resulting in a combined adjusted offense level of 32. USSG §3D1.4.

Even though Mr. Rivas faces a base offense level of 32 based upon the above calculations, he nonetheless faces the Chapter Four Enhancement.

Because he is a career offender and has been convicted of violation of 18 U.S.C. §924( c ), his guideline range is 360 to life pursuant to Guideline §4B1.1( c )(3).

Based upon the 3553(a) sentencing factors, the defense requests that this court sentence below the guideline range and sentence Mr. Rivas to a total sentence of 300 months.

3.  The Section 3553(a) Factors Weigh in Favor of a Sentence Below
    The Guideline Range

Joel Rivas is currently 35 years old. If sentenced to 360 months, as recommended by the government, he will be 62 years old when released. If so sentenced, Mr. Rivas will essentially be excluded from society for the years of his life when he can contribute as a productive member of society. No matter how the court may view his actions, he does not fit the mold of an incorrigible criminal who can only be described as a "menace to society." He was raised under circumstances that encouraged criminal conduct and failed to provide positive direction. But in spite of the negative influences, he made some positive achievements in education and in advancing to a career in auto mechanics.

The government argues that a sentence of 30 years is necessary to protect the public and to promote respect for the law. As a practical matter, it is doubtful that a sentence of 30 years provides anymore protection to the public than a sentence of 25 years. By the time, Mr. Rivas is released from incarceration after serving a sentence of 25 years, it is shear speculation that he could or would have any motivation to return to the criminal environment that made it possible for him to buy and sell drugs in 2009. Moreover, studies by the United States Sentencing Commission confirm that offenders over the age of 50 have the lowest recidivism rates. R. 193 at 9.

While it is true that Mr. Rivas offense is serious, he did not engage in any direct violence nor was he a leader or supervisor in criminal organization. A sentence of 30 years is most frequently reserved for a major player in a larger drug organization or a violent defendant who presents an ongoing risk of danger to society.

In Mr. Rivas case, when the social costs of his imprisonment are compared to the benefits of imprisonment for society, it is clear that the benefit of his release after serving a 25 year sentence outweighs the social cost of his imprisonment. The court can permit his release while he still can make a contribution. In terms of prediction, his record of previous incarceration shows that he takes advantage of the positive opportunities offered to him: he advances his education, he accepts works assignments, and is viewed by others as hardworking and a good employee. If released after a 25-year sentence, he can work and still contribute to society, rather than becoming a burden to society and to those around him. In the end, the only reason for the longer sentence is retribution, but this crime although serious, was not heinous. As noted in the PSR, the annual cost for residence in a Bureau of Prisons facility is $28,948. Undoubtedly, within 25 years that amount may have increased two-fold or three-fold. The cost of imprisonment should be compared to the benefit that a skilled auto mechanic can provide to society. Evidence at trial clearly established that Joel Rivas likes to work, and does work when provided the opportunity. If this court sentences Joel Rivas to 300 months, he will be sufficiently punished both for his crimes and for whatever inconvenience he brought to the Court, and such a sentence will provide sufficient protection to society, adequate deterrence of any future crime by the defendant, and sufficient punishment.

        Respectfully submitted,


        *S/Linda Amdur*
        Attorney for Defendant Joel Rivas

Linda Amdur
53 West Jackson Blvd.
Suite 657
Chicago, IL 60604
(312) 347-9999

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 10 CR 617 |
| ) | Honorable Amy St. Eve |
| **JOEL RIVAS,** ) | |
| Defendant. ) | |

### CERTIFICATE OF SERVICE

    The undersigned attorney hereby certifies that in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR 5.5, and the General Order on Electronic case Filing (ECF), Defendant Joel Rivas' Sentencing Memorandum was served pursuant to the district court's ECF system as to ECF filers on October 7, 2013.

Respectfully submitted,

*S/Linda Amdur*
Linda Amdur, Attorney for
Defendant Joel Rivas
53 West Jackson Blvd.
Suite 657
Chicago, IL 60604
(312) 347-9999